# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FULFILLIUM, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 17-453-RGA |
| v. ) | |
| ) | |
| RESHAPE MEDICAL, INC., ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT RESHAPE MEDICAL, INC.'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

OF COUNSEL:

Nicola A. Pisano
Jose L. Patiño
Justin E. Gray
FOLEY & LARDNER LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
(858) 847-6700

Dated: September 1, 2017
5380467

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for
ReShape Medical, Inc.*

## **TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………………..1

II. ARGUMENT…………………………………………………………………………..2

    A. Fulfillium's Claim for Trade Secret Misappropriation Should be Dismissed……2

        1. Fulfillium Admits Knowledge of ReShape Medical's Activities in 2012-2013……………………………………………………………………2

        2. Fulfillium's Claim That ReShape Medical Was Operating in "Stealth Mode" Is Not Plausible…………………………………………..3

        3. There Is No Reason to Toll the Statute of Limitations……………………3

        4. The Only Alleged Trade Secrets Are Public Knowledge…………………4

    B. Fulfillium's Patent Infringement Claims Should Be Dismissed…………………..7

    C. Fulfillium's Willfulness Claims Should Be Dismissed…………………………...9

    D. Fulfillium Should Not Be Granted Leave to Amend…………………………….10

# **TABLE OF AUTHORITIES**

**CASES**

Page(s)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................8, 10

*Avery v. Barsky*,
    No. 3:12-cv-00652-MMD-WGC, 2013 WL 1663612 (D. Nev. Apr. 17, 2013) ........4

*Bayer Healthcare, LLC v. Baxalta Inc.*,
    No. 16-1122-RGA, 2017 U.S. Dist. LEXIS 126904 (D. Del. Aug. 10, 2017) ........10

*Bio-Rad Labs. Inc., Thermo Fisher Sci. Inc.*
    No. 16-358-RGA, 2017 U.S. Dist. LEXIS 13548 (D. Del. Feb. 1, 2017) ...............10

*Capricorn Pharma, Inc. v. Matrixx Initiatives, Inc.*,
    No. 08-873-JJF, 2009 U.S. Dist. LEXIS 73227 (D. Del. Aug. 19, 2009) .................4

*Dallakian v. IPG Photonics Corp.*,
    No. 13-11863-TSH, 2014 WL 3109964 (D. Mass. July 7, 2014)..............................3

*Data Distribution Techs., LLC v. BRER Affiliates, Inc.*,
    No. 12-4878, 2014 WL 4162765 (D.N.J. Aug. 19, 2014) .........................................9

*Diodes, Inc. v. Franzen*,
    260 Cal. App. 2d 244 (Cal. Ct. App. 1968) ...............................................................5

*Ferris Mfg. Corp. v. Carr*,
    No. 14 C 04663, U.S. Dist. LEXIS 6376 (N.D. Ill. Jan. 21, 2015) ...........................3

*Forcier v. Microsoft Corp.*,
    123 F. Supp. 2d 520 (N.D. Cal. 2000) .......................................................................2

*Garcia v. MCC Med. Staff*,
    No. 11cv1028 JAH (POR), 2011 U.S. Dist. LEXIS 76872 (S.D. Cal. July 15,
    2011) ..........................................................................................................................4

*Modern Telecom Sys. LLC v. Earthlink, Inc.*,
    No. SA CV 14-0347-DOC, 2015 WL 1239992 (C.D. Cal. Mar. 17, 2015) .............9

*OrbusNeich Med. Co. v. Boston Sci. Corp.*,
    694 F. Supp. 2d 106 (D. Mass. 2010) ........................................................................4

*Pellerin v. Honeywell Int'l, Inc.*,
    877 F. Supp. 2d 983 (S.D. Cal. 2012)........................................................................5

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) .................................................................................................. 5

*Ruffin v. Bank of Am.*,
    No. 12-1677-GMS, 2014 WL 3828408 (D. Del. Aug. 1, 2014) ........................... 5-6

*Ultramercial, Inc. v. Hulu, LLC*,
    722 F.3d 1335 (Fed. Cir. 2013) ................................................................................ 8

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .................................................................................. 8

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) .................................................................................................... 8

*WildTangent, Inc. v. Ultramercial, LLC*,
    134 S. Ct. 2870 (2014) .............................................................................................. 8

*Zimmer Surgical, Inc. v. Stryker Corporation*,
    C. A. No. 16–679–RGA–MPT, slip op. (D. Del. Aug. 29, 2017)  ........................... 8

**OTHER AUTHORITIES**

                                                                                    **Page(s)**

21 C.F.R. § 860.7 ................................................................................................................ 6

iii

## I.     INTRODUCTION

The new allegations set forth in Fulfillium's Opposition confirm that the Motion to Dismiss should be granted. Fulfillium now admits that Dr. Chen knew of ReShape Medical's clinical trials efforts no later than 2013, thus rendering the trade secret claims time-barred. In addition, Fulfillium's two purported trade secrets relating to clinical trial design and selection of a principal investigator were common knowledge and cannot qualify as trade secrets. Likewise, Fulfillium's claim that ReShape Medical operated in "stealth mode" is demonstrably false: Fulfillium does not dispute that ReShape Medical disclosed the design of its patented intragastric balloon device on its publicly available website (that Fulfillium concedes visiting regularly) many years ago and well beyond the reach of the applicable statute of limitations.

Fulfillium's patent infringement claims fare no better. Confronted with the stark reality that ReShape Medical measures only the height of the patient, not the size of the gastric cavity, Fulfillium now argues that claim construction is required. But Fulfillium offers no claim construction and identifies no support in its patents that its claims could be construed to cover Reshape Medical's products. As to its claim of willfulness regarding patents that issued just before filing of the Complaint, Fulfillium offers nothing more by its brief than mere conjecture.

Fulfillium's brief demonstrates that it cannot proffer plausible facts that would entitle it to relief on its trade secret misappropriation claims, its claim of infringement of the '915 patent and claims 12-18 of the '930 patent, or its claims of willful infringement. These claims should be dismissed, and in light of the abject lack of support for the claims, the dismissal should be with prejudice.

## II. ARGUMENT

### A. Fulfillium's Claim for Trade Secret Misappropriation Should be Dismissed.

#### 1. Fulfillium Admits Knowledge of ReShape Medical's Activities in 2012-2013.

Dr. Chen now admits he knew ReShape Medical was pursuing clinical trials in the 2012-2013 timeframe, well before the applicable three-year statute of limitations period. (D.I. 17 at 8.) Inexplicably, he says he was entitled to ignore this information, rather than investigate ReShape Medical's activities. Dr. Chen fails to explain why he waited until the summer of 2014 to begin his investigation or April 2017 to file this litigation.[1] Fulfillium does not deny that ReShape Medical's website disclosed as early as January 2012 the device design Dr. Chen now alleges to incorporate his trade secrets. (D.I. 11-1, Exs. E, G.)

Even the most cursory investigation, requiring no more than a few minutes (e.g., visiting ReShape Medical's website in 2012 and 2013 after Dr. Chen heard about ReShape Medical's clinical trials) would have uncovered the same information purportedly supporting this litigation. Likewise, a quick search of the Patent Office website for published patent applications of Abdominus or George Wallace would have revealed the same information. And, as explained in ReShape Medical's opening brief, once Dr. Chen was on notice of ReShape Medical's device design (alleged to incorporate Fulfillium's trade secrets), Dr. Chen had a duty to investigate whether any of his *other* alleged trade secrets had been misappropriated. *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D. Cal. 2000). Dr. Chen not only was on inquiry notice by virtue of Abdominus' and ReShape Medical's publications, but he had actual notice. Instead of

---

[1] The answer, of course, is that Dr. Chen was waiting for his patent applications to issue in late 2016 so he could also file patent infringement claims. But by so doing, Dr. Chen allowed the statute of limitations on his trade secret claims, to the extent he ever had any, to expire.

acting when required to do so, Dr. Chen sat on his supposed rights, allowing the period allowed by the statute of limitations to expire. His willful ignorance of the truth provides no excuse.

### 2. Fulfillium's Claim That ReShape Medical Was Operating in "Stealth Mode" Is Not Plausible.

Fulfillium argues that Dr. Chen could not have discovered the alleged trade secret misappropriation prior to the summer of 2014 because ReShape Medical was operating in "stealth mode." As demonstrated in ReShape Medical's opening brief, Fulfillium's contention is demonstrably false. The undisputed facts show that ReShape Medical had been operating in the open for a number of years before the summer of 2014. ReShape Medical's website, since at least January 2012, included an image of its intragastric device that Fulfillium alleges embodies its trade secrets. (D.I. 11-1, Exs. E, G.) Fulfillium also does not deny that ReShape Medical's published patent applications publicly disclosed its device design, all published well before the three-year statute of limitations, and some almost a decade before Fulfillium filed this litigation. (D.I. 11-1, Exs. A-C.) Given this unrebutted evidence, Fulfillium cannot plausibly argue that Dr. Chen's willful ignorance of ReShape Medical's activities should toll the statute of limitations.

### 3. There Is No Reason to Toll the Statute of Limitations.

ReShape Medical's opening brief demonstrates that California trade secret law alone applies to this case, and that in accordance with that law, Fulfillium's trade secret claims here are time-barred. (D.I. 10 at 9.) Ignoring that authority, Fulfillium instead cites to numerous cases applying the law of other states, including some cases having nothing to do with trade secret misappropriation. *Ferris Mfg. Corp. v. Carr*, No. 14 C 04663, U.S. Dist. LEXIS 6376 (N.D. Ill. Jan. 21, 2015) (analyzing statute of limitations for Illinois state law claims for breach of contract and breach of fiduciary duty); *Dallakian v. IPG Photonics Corp.*, No. 13-11863-TSH, 2014 WL 3109964 (D. Mass. July 7, 2014) (analyzing statute of limitations under Massachusetts state

law); *Avery v. Barsky*, No. 3:12-cv-00652-MMD-WGC, 2013 WL 1663612 (D. Nev. Apr. 17, 2013) (analyzing statute of limitations under Nevada state law); *OrbusNeich Med. Co. v. Boston Sci. Corp.*, 694 F. Supp. 2d 106 (D. Mass. 2010) (analyzing statute of limitations with respect to Massachusetts state law breach of contract and tort claims); *Capricorn Pharma, Inc. v. Matrixx Initiatives, Inc.*, No. 08-873-JJF, 2009 U.S. Dist. LEXIS 73227 (D. Del. Aug. 19, 2009) (analyzing statute of limitation under Delaware state law).

Bereft of plausible allegations, Fulfillium invokes the doctrine of equitable tolling, but again fails to allege any plausible supporting facts. *See, e.g., Garcia v. MCC Med. Staff*, No. 11cv1028 JAH (POR), 2011 U.S. Dist. LEXIS 76872 (S.D. Cal. July 15, 2011) (identifying California's three-factor test for equitable tolling). Regarding the first factor (plaintiff's diligence in pursuing its claim), as explained both in ReShape Medical's opening brief and here, Fulfillium did not diligently pursue its claim, despite having inquiry notice as early as a decade ago regarding ReShape Medical's patent applications and website and actual notice of ReShape Medical's clinical activities in the 2012-2013 timeframe. Regarding the second factor (plaintiff facing forces beyond his control), Dr. Chen offers no plausible reason why he could not have investigated ReShape Medical's website and patent applications prior to the summer of 2014, or investigated after receiving actual notice of ReShape Medical's attempted trial no later than 2013. With respect to the third factor (defendant must not be prejudiced by the application of equitable tolling), had Fulfillium brought suit years earlier, as it should have, this litigation would have been resolved long prior to ReShape Medical having obtained FDA approval to market its products in July 2015. On the record before this Court, there is no basis to apply equitable tolling to Fulfillium's trade secret misappropriation claims.

### 4. The Only Alleged Trade Secrets Are Public Knowledge.

Fulfillium's Complaint vaguely suggests categories of information that it contends are

subject to trade secret protection ("device design, procedure design, clinical trial design, regulatory strategy, and business strategy"). (D.I. 1 ¶ 34.) However, the Complaint fails to describe the alleged trade secrets with particularity, as required by the controlling California law. *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (Cal. Ct. App. 1968); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012).

In its Opposition, Fulfillium identifies two, and only two, alleged trade secrets: clinical trial design and approach to selecting a principal investigator. As an initial matter, neither of these alleged trade secrets appears in the Complaint and therefore should be disregarded. *See Ruffin v. Bank of Am.*, No. 12-1677-GMS, 2014 WL 3828408, at *3 (D. Del. Aug. 1, 2014) (stating that Third Circuit precedent holds "that opposition briefs cannot be used to amend a complaint."). Even if the Court considers Fulfillium's proposed amendment, such amendment would be futile because neither qualifies as a trade secret. The USTA defines the term "trade secret" as: information, including a formula, pattern, complication, program, device, method, technique, or process, that:

> (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal Civ. Code. § 3426.1(d). "Information that is public knowledge or generally known in an industry cannot be a trade secret." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

Neither alleged Fulfillium trade secret is plausible because they were common knowledge in the medical device industry. Fulfillium's "clinical trial design" trade secret, viz., to conduct a trial that was "prospective and randomized" and also had a "control arm" (D.I. 17 at 9) was generally known in the medical device industry. For example, the U.S. Food and Drug Administration published a 58-page document on its website in August 2011 entitled "Draft

5

Guidance for Industry, Clinical Investigators, and Food and Drug Administration Staff – Design Considerations for Pivotal Clinical Investigations for Medical Devices" (the "FDA Guidance"). (Declaration of Justin E. Gray in Support of Defendant ReShape Medical Inc.'s Reply Brief in Support of Its Motion to Dismiss ("Gray Decl.") Ex. A.)  That document, which was publicized in the industry when released, describes in great detail the benefits of prospective, randomized studies using a control arm.  (*See, e.g., id.* at 26-30, 32, 34-35, 41, Ex. B.)[2]  Similar guidance for clinical trials is provided in the Code of Federal Regulations.  *See, e.g.*, 21 C.F.R. § 860.7.

Fulfillium's other alleged trade secret, "to select a principal investigator based primarily on credibility and reputation," (D.I. 17 at 10), likewise was well-known.  The FDA Guidance states that an investigator "should be qualified by education, training, and experience to assume responsibility for the proper conduct of the trial … and should provide evidence of such qualifications through up-to-date curriculum vitae and/or other relevant documentation requested by the sponsor, the IRB/IEC, and/or the regulatory authority(ies)."  (Gray Decl. Ex. A at 13.) Further, "the investigator should be able to demonstrate (e.g., based on retrospective data) a potential for recruiting the required number of suitable subjects within the agreed recruitment period" and "should ensure that adequate medical care is provided to a subject for any adverse events, … related to the trial."  (*Id.* at 14.)  In order to meet these requirements – that the clinician be experienced in the field, able to enroll a sufficient number of qualified subjects, and know how to deal with possible adverse events, he or she generally must be a clinician with considerable stature in the field.  Fulfillium's alleged trade secret is fully disclosed in the FDA Guidance.

---

[2] ReShape Medical requests the Court take judicial notice of these documents for the same reasons explained in ReShape Medical's opening brief for the documents discussed therein.

As also demonstrated in ReShape Medical's opening brief, any supposed trade secrets relating to Dr. Chen's bariatric medical device terminated when Fulfillium's patent application published in December 2005. Fulfillium's Opposition does not dispute this plain fact, confirming that dismissal is required. Because Fulfillium is unable to identify even a single plausible trade secret, or provide a plausible reason why the statute of limitations has not already expired, its trade secret cause of action must be dismissed.

**B.     Fulfillium's Patent Infringement Claims Should Be Dismissed.**

Unable to demonstrate plausible patent infringement claims, Fulfillium argues that claim construction is needed to resolve ReShape Medical's pleading-based motion. Yet Fulfillium offers no proposed construction that would avoid the merits of the motion to dismiss. It boggles the imagination for Fulfillium to contend that a patient's height could be somehow related to the size of the patient's gastric cavity *in a feeding state*, as required by claims 12-18 of each of the asserted patents. The patents certainly include no such disclosure. Rather, each of the patents-in-suit devotes an entire paragraph to describing how the dimensions of the gastric cavity can be measured or estimated: visually examining the gastric cavity; directly observing the interior of the stomach; or having the patient consume a biocompatible filling medium (e.g. water, contrast medium, food). (D.I. 1-1 at 12:65-13:16; D.I. 1-2 at 12:65-13:16.) Nothing in the specification or the file history of either patent supports Fulfillium's contention that the dimensions of the gastric cavity correspond to measuring the height of the patient, much less in "a feeding state."

Fulfillium's proposed equivalence argument would rewrite its asserted claims to eliminate a claim limitation, and is thus improper. "[I]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete judgment should be rendered by the court,

as there would be no further material issue for the jury." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39, n.8 (1997).

Because Fulfillium offers no plausible argument that it can unreasonably extend the scope of its patents in ways never contemplated by the intrinsic evidence, it cannot plausibly assert infringement. And because Fulfillium is unable to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," dismissal is appropriate. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Neither claim construction nor expert discovery is needed to determine that Fulfillium's equivalence argument is implausible. Common sense informs that two individuals of the same height (for example six feet tall), but with drastically different weights (e.g., 200 pounds and 500 pounds), will have different gastric cavity sizes. And it is common knowledge that one's height does not change when "in a feeding state" (unless, of course, one sits down to eat). Fulfillium can point to no evidence that ReShape Medical either measures or estimates the size of the patient's gastric cavity. Thus, Fulfillium's implausible claims should be dismissed.

Fulfillium's cited cases are unavailing, when not just plain wrong. Its reliance on *Ultramercial* is error; that decision was vacated by the U.S. Supreme Court (*WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014)). Moreover, *Ultramercial* involved a motion to dismiss for lack of patentable subject matter, not a motion to dismiss for failure to state a plausible claim of infringement. *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1337 (Fed. Cir. 2013). On remand, the Federal Circuit dismissed for lack of patentable subject matter, holding that formal claim construction was not needed to decide defendant's motion. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014). *Data Distribution Technologies* and *Modern*

8

*Telecom* also are inapposite; both cases concerned motions to dismiss for lack of patentable subject matter. *Data Distribution Techs., LLC v. BRER Affiliates, Inc.*, No. 12-4878 (JBS/KMW), 2014 WL 4162765 (D.N.J. Aug. 19, 2014); *Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. SA CV 14-0347-DOC, 2015 WL 1239992 (C.D. Cal. Mar. 17, 2015). In *Data Distribution Technologies*, the court explained that "the best way for a court to apply constructions most favorable to the plaintiff is to apply the plaintiff's proposed constructions," 2014 WL 4162765, at *8, but Fulfillium proffers no such construction here. In *Modern Telecom*, the court expressly acknowledged that a motion to dismiss can "be decided on the pleadings without the benefit of a claims construction hearing," citing Federal Circuit authority. 2015 WL 1239992, at *6.

### C. Fulfillium's Willfulness Claims Should Be Dismissed.

The only "facts" Fulfillium alleges in support of its willfulness claims are that ReShape Medical "has been aware" of the '915 and '930 patents "since [their] issuance and continues to engage in infringing conduct." (D.I. 1 ¶¶ 108, 188.) The Complaint does not allege any facts in support of that conclusory language or the allegation in Fulfillium's brief, that "it can be readily inferred that ReShape was actively monitoring Fulfillium's patent portfolio." (D.I. 17 at 18.) As recited in the Complaint, the only interaction between Dr. Chen and anyone associated with ReShape Medical or its predecessor occurred in 2005. (D.I. 1 ¶¶ 16-25.) Dr. Chen does not aver that he communicated with anyone associated with ReShape Medical in the past decade. And both asserted patents issued in late 2016. (D.I. 1-1 at 1, D.I. 1-2 at 1.)

Apart from its conclusory statements, Fulfillium offers no plausible facts, nor could it, that ReShape Medical would have been "actively monitoring" Fulfillium for well over a decade. A claim is facially plausible only "when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Nothing in the Complaint, or Fulfillium's brief, allows this Court to draw a reasonable inference that ReShape Medical is liable for willful infringement.

Fulfillium's cited cases again are inapposite. In *Bio-Rad*, the plaintiff alleged that it gave the defendant notice of infringement and engaged in licensing discussions about the patent-in-suit prior to filing its Complaint. *Bio-Rad Labs. Inc., Thermo Fisher Sci. Inc.*, No. 16-358-RGA, 2017 U.S. Dist. LEXIS 13548, at *3 (D. Del. Feb. 1, 2017). Fulfillium makes no such allegations. In *Bayer*, this Court held that allegations concerning prior knowledge of related patent applications "strains the bounds of plausibility" of alleging pre-suit knowledge of the asserted patent. *Bayer Healthcare, LLC v. Baxalta Inc.*, No. 16-1122-RGA, 2017 U.S. Dist. LEXIS 126904, at *3 (D. Del. Aug. 10, 2017).

Further, as this Court recently held, a claim for post-complaint willfulness must also "have some factual content." *Zimmer Surgical, Inc. v. Stryker Corporation*, C. A. No. 16–679–RGA–MPT, slip op. at 4 (D. Del. Aug. 29, 2017). Here, as in *Zimmer*, there is none.. As there are no plausible allegations that ReShape Medical had pre-suit knowledge of the asserted patents and no factual content regarding post-suit willfulness, Fulfillium's claim of willfulness should be dismissed.

### D. Fulfillium Should Not Be Granted Leave to Amend.

Fulfillium seeks leave to amend its Complaint to add new disclosed allegations, as well as some undisclosed allegations. As demonstrated above, because such an amendment would be futile, ReShape Medical's motion to dismiss should be granted with prejudice.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Nicola A. Pisano<br>Jose L. Patiño<br>Justin E. Gray<br>FOLEY & LARDNER LLP<br>3579 Valley Centre Drive, Suite 300<br>San Diego, CA 92130<br>(858) 847-6700 | By: */s/ Philip A. Rovner*<br>    Philip A. Rovner (#3215)<br>    Jonathan A. Choa (#5319)<br>    Hercules Plaza<br>    P.O. Box 951<br>    Wilmington, DE  19899<br>    (302) 984-6000<br>    provner@potteranderson.com<br>    jchoa@potteranderson.com |
| Dated:  September 1, 2017<br>5380467 | *Attorneys for*<br>*ReShape Medical, Inc.* |