Nicola A. Pisano (CA Bar No. 151282)
  npisano@foley.com
Jose L. Patiño (CA Bar No. 149568)
  jpatino@foley.com
Justin E. Gray (CA Bar No. 282452)
  jegray@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130-3302
Telephone:  858.847.6700
Facsimile:   858.792.6773

Attorneys for Defendant and Counter-Plaintiff
RESHAPE MEDICAL LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| FULFILLIUM, INC., <br><br> Plaintiff, <br><br> v. <br><br> RESHAPE MEDICAL LLC, SV HEALTH INVESTORS, LLC, AND RESHAPE LIFESCIENCES, INC., <br><br> Defendants. | Case No. 2:17-cv-08419-RGK-PLA <br><br> **RESHAPE MEDICAL LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF STANDING** |
| RESHAPE MEDICAL LLC, <br><br> Counter-Plaintiff, <br><br> v. <br><br> FULFILLIUM, INC., <br><br> Counter-Defendant. | Date:   July 2, 2018 <br> Time:   9:00 a.m. <br> Place:   Roybal, Courtroom 850, 8th Fl. <br> Judge:   Hon. R. Gary Klausner |

Case No. 2:17-cv-08419-RGK-PLA

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. STATEMENT OF FACTS ..................................................................................1

III. LEGAL STANDARD ..........................................................................................3

    1. Motion To Dismiss For Lack Of Subject Matter Jurisdiction Pursuant To Rule 12(b)(1)................................................................................3

    2. Standing And Subject Matter Jurisdiction .....................................................3

    3. Standing And Patent Assignments .................................................................4

    4. Dismissal For Failure To Join A Necessary And Indispensable Party ........4

IV. FULFILLIUM LACKS STANDING TO SUE IN ITS NAME ALONE BECAUSE IT IS A MERE CO-OWNER OF THE '930, '915, AND '367 PATENTS ............................................................................................................5

    1. Assignment Of The '224 Application Transferred Title To The '930, '915, and '367 Patents To Sensurtec.................................................5

    2. Fulfillium Is A Mere Co-Owner Because Dr. Chen Had No Legal Title To Assign To Fulfillium In The '930, '915, Or '367 Patents. ............8

    3. Sensurtec Is An Indispensable Party, Was Not Joined By Fulfillium, And The Patent Claims Must Now Be Dismissed. ......................................9

V. CONCLUSION...................................................................................................11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*A123 Sys., Inc. v. Hydro-Quebec*,
　626 F.3d 1213 (Fed. Cir. 2010) .................................................................... 10

*Abraxis Bioscience, Inc. v. Navinta LLC*,
　625 F.3d 1359 (Fed. Cir. 2010) ...................................................................... 8

*Applied Materials, Inc. v. Negevtech, Inc.*,
　No. C 04-03656 SI, 2005 WL 1656894 (N.D. Cal. July 14, 2005).................... 4, 6, 8

*Augustine v. United States*,
　704 F.2d 1074 (9th Cir. 1983) ....................................................................... 3

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
　583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011).......................... 4

*Cammeyer v. Newton*,
　94 U.S. 225 (1876)......................................................................................... 4

*DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*,
　517 F.3d 1284 (Fed. Cir. 2008) .................................................................. 4, 5

*Ethicon, Inc. v. U.S. Surgical Corp.*,
　135 F.3d 1456 (Fed. Cir. 1998) .................................................................. 3, 8

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
　93 F.3d 774 (Fed. Cir. 1996) ......................................................................... 4

*Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
　504 F.3d 1273 (Fed. Cir. 2007) ..................................................................... 9

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
　248 F.3d 1333 (Fed. Cir. 2001) ..................................................................... 9

*Israel Bio-Eng'g Project v. Amgen Inc.*,
　475 F.3d 1256 (Fed. Cir. 2007) .............................................................. 3, 5, 9

*Lyon v. Gila River Indian Cmty.*,
　626 F.3d 1059 (9th Cir. 2010) ....................................................................... 4

# TABLE OF AUTHORITIES
## (*Continued*)

Page(s)

**Cases (*Cont.*)**

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
  150 F.3d 1374 (Fed. Cir. 1998) .................................................................... 8

*MHL Tek, LLC v. Nissan Motor Co.*,
  655 F.3d 1266 (Fed. Cir. 2011) .................................................................... 7

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
  52 F.3d 1026 (Fed. Cir. 1995) ...................................................................... 4

*Pistor v. Garcia*,
  791 F.3d 1104 (9th Cir. 2015) ...................................................................... 3

*Pope Mfg Co. v. Gormully & Jeffery Mfg. Co.*,
  144 U.S. 248 (1892) .................................................................................. 7, 9

*Prima Tek II, L.L.C. v. A-Roo Co.*,
  222 F.3d 1372 (Fed. Cir. 2000) ............................................................... 3, 10

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) ...................................................................... 3

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971 (Fed. Cir. 2005) ...................................................................... 3

*STC.UNM v. Intel Corp.*,
  754 F.3d 940 (Fed. Cir. 2014) ............................................................. 5, 9, 10

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ........................................................................ 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 1, 3, 11

Fed. R. Civ. P. 12(b)(7) ................................................................................ 1, 4, 11

Fed. R. Civ. P. 19 ........................................................................................ 4, 5, 10

MPEP § 201.07 ..................................................................................................... 6

# TABLE OF AUTHORITIES
## (*Continued*)

Page(s)

**Cases (*Cont.*)**

*Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*,
  150 F.3d 1374 (Fed. Cir. 1998) .................................................................... 8

*MHL Tek, LLC v. Nissan Motor Co.*,
  655 F.3d 1266 (Fed. Cir. 2011) .................................................................... 7

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
  52 F.3d 1026 (Fed. Cir. 1995) ...................................................................... 4

*Pistor v. Garcia*,
  791 F.3d 1104 (9th Cir. 2015) ...................................................................... 3

*Pope Mfg Co. v. Gormully & Jeffery Mfg. Co.*,
  144 U.S. 248 (1892) .................................................................................. 7, 9

*Prima Tek II, L.L.C. v. A-Roo Co.*,
  222 F.3d 1372 (Fed. Cir. 2000) ............................................................... 3, 10

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) ...................................................................... 3

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*,
  427 F.3d 971 (Fed. Cir. 2005) ...................................................................... 3

*STC.UNM v. Intel Corp.*,
  754 F.3d 940 (Fed. Cir. 2014) ............................................................. 5, 9, 10

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*,
  594 F.2d 730 (9th Cir. 1979) ........................................................................ 3

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ................................................................................ 1, 3, 11

Fed. R. Civ. P. 12(b)(7) ................................................................................ 1, 4, 11

Fed. R. Civ. P. 19 ........................................................................................ 4, 5, 10

MPEP § 201.07 ..................................................................................................... 6

# TABLE OF AUTHORITIES
### (*Continued*)

Page(s)

**Other Authorities (*Cont.*)**

MPEP § 201.08 .................................................................................................. 6, 7

MPEP § 306 ....................................................................................................... 6, 7

## I. INTRODUCTION

Defendant ReShape Medical LLC ("ReShape Medical") respectfully moves this Court to dismiss the patent infringement claims from this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7) because Plaintiff Fulfillium, Inc. ("Fulfillium") is, at most, a mere co-owner of the patents-in-suit. Fulfillium does not have sufficient standing to sue for infringement in its name alone, and must have joined the other co-owner, Sensurtec, Inc. ("Sensurtec"), as co-plaintiff to establish such standing. Plaintiff was informed of this defect in its standing at least as early as April 19, 2018, yet chose not to add co-owner Sensurtec during the period allocated by the Court in which to add new parties. Fulfillium's claims for patent infringement now must be dismissed for failure to join an indispensable party.

## II. STATEMENT OF FACTS

On April 20, 2017, Fulfillium sued ReShape Medical alleging infringement of U.S. Patent Nos. 9,445,930 ("the '930 patent") and 9,456,915 ("the '915 patent"). (D.I. 1.) On May 25, 2018, Fulfillium filed a Second Amended Complaint alleging infringement of the '930 and '915 patents as well as U.S. Patent No. 9,808,367 ("the '367 patent"). (D.I. 116.)

The '930 patent, entitled "Methods, Devices, and Systems for Obesity Treatment," was filed on December 16, 2015, and claims priority, *inter alia*, as a continuation application of U.S. patent application Serial No. 11/282,224 ("the '224 application"), filed November 18, 2005, which is a continuation-in-part application of U.S. patent application Serial No. 11/170,274 ("the '274 application"), filed June 28, 2005. (Declaration of Justin E. Gray in Support of ReShape Medical LLC's Motion to Dismiss for Lack of Standing ("Gray Decl.") Ex. 1.) The '915 patent, entitled "Methods, Devices, and Systems for Obesity Treatment," was filed on December 16, 2015, and also claims priority, *inter alia*, as a continuation application of the '224 application, filed November 18, 2005, which is a continuation-in-part application of the '274 application, filed June 28, 2005. (Gray Decl. Ex. 2.) The '367 patent, entitled "Methods, Devices,

1 and Systems for Obesity Treatment," was filed on June 13, 2017, and also claims
2 priority, *inter alia*, as a continuation application of U.S. patent application Serial No.
3 15/232,485, which is a continuation application of U.S. patent application Serial No.
4 14/971,845, which is a continuation application of the '224 application, filed November
5 18, 2005, which is a continuation-in-part application of the '274 application, filed June
6 28, 2005. (Gray Decl. Ex. 3.) Each of the '930, '915, and '367 patents identifies
7 Richard D.Y. Chen ("Dr. Chen"), Craig A. Johanson, Christopher S. Jones, Reinhold H.
8 Dauskardt and Marc B. Taub as the named inventors. (Gray Decl. Exs. 1-3.)

At the time the applications for the '930 and '915 patents were filed, the specifications of the alleged inventions were identical to the specification for the '224 application. (*Cf.*, Gray Decl. Exs. 4, 5 to Gray Decl. Ex. 7.) At the time the application for the '367 patent was filed, the specification for that application contained all of the disclosure in the specification of the '224 application. (*Cf.*, Gray Decl. Ex. 6 to Gray Decl. Ex. 7.) The specification for the '224 application differed from the specification of the '274 application, requiring that the '224 application be filed as a continuation-in-part application of the '274 application. (*Cf.*, Gray Decl. Ex. 7 to Ex. 8.)

On July 19, 2013, Dr. Chen executed an assignment of the '224 application to Sensurtec, which recites that:

> For good and valuable consideration, receipt of which is hereby acknowledged by Assignor, Assignor has assigned, and by these presents does assign to Assignee all right, title and interest in and to the invention and application and to all foreign counterparts (including patent, utility model and industrial designs), and in and to any Letters Patent and Registrations which may hereafter be granted on the same in the United States and all countries throughout the world, and to claim the priority from the application as provided by the Paris Convention. The right, title and interest is to be held and enjoyed by Assignee and Assignee's successors and assigns as fully and exclusively as it would have been held and enjoyed by Assignor had this Assignment not been made, for the full term of any Letters Patent and Registrations which may be granted thereon, or of any division, renewal, continuation in whole or in part, substitution, conversion, reissue, prolongation or extension thereof.

(Gray Decl. Ex. 9.)

During prosecution of the applications for the '930 and '915 patents, between August 3, 2016 and August 11, 2016, all of the named inventors purported to execute assignments of those applications to Fulfillium. (Gray Decl. Exs. 10, 11.) During prosecution of the application for the '367 patent, Fulfillium relied on the same assignment filed during prosecution of the '930 and '915 patents. (Gray Decl. Ex. 12.)

### III. LEGAL STANDARD

#### 1. Motion To Dismiss For Lack Of Subject Matter Jurisdiction Pursuant To Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a claim for lack of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case. *See Pistor v. Garcia*, 791 F.3d 1104, 1110 (9th Cir. 2015). "In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). When jurisdiction rests on a disputed factual issue, however, the court reviews the parties' submitted evidentiary materials, and it is the plaintiff that bears the burden of proving, by a preponderance of the evidence, the facts support subject matter jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

#### 2. Standing And Subject Matter Jurisdiction

"The question of standing is a jurisdictional [issue]." *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995). This "threshold requirement … must be present at the time the suit is brought." *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005). Where a patent has more than one owner, meeting the requirements of prudential standing requires joinder of all of the patent's co-owners. *See Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1262 (Fed. Cir. 2007); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000); *Ethicon, Inc. v. U.S.*

1 *Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Otherwise, a patent infringement
2 claim must be dismissed. *See Ethicon*, 135 F.3d at 1460.

3 "It is well settled that questions of standing can be raised at any time," and the
4 plaintiff bears the burden of establishing it has standing. *Bd. of Trs. of Leland Stanford*
5 *Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009), *aff'd*,
6 563 U.S. 776 (2011); *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032-33
7 (Fed. Cir. 1995).

### 3. Standing And Patent Assignments

9 "Whether a patent assignment clause creates an automatic assignment or merely
10 an obligation to assign is intimately bound up with the question of standing in patent
11 cases. We have accordingly treated it as a matter of federal law." *DDB Techs., L.L.C. v.*
12 *MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008). "Inventions may be
13 assigned before they are patented." *Cammeyer v. Newton*, 94 U.S. 225, 226 (1876).
14 When an "inventor has no legal title to assign at a future date, his purported assignees
15 have no standing to sue for infringement." *See Gaia Techs., Inc. v. Reconversion Techs.,*
16 *Inc.*, 93 F.3d 774, 778 (Fed. Cir. 1996) (dismissing plaintiff's patent and trademark
17 infringement claims for lack of standing because of its "inability to prove that it was the
18 owner of the Intellectual Property at the time the suit was filed").

19 An assignment of an invention in a continuation patent application applies to the
20 inventions disclosed in the application, not specific claims. *See, e.g., Applied Materials,*
21 *Inc. v. Negevtech, Inc.*, No. C 04-03656 SI, 2005 WL 1656894, at *3-4 (N.D. Cal. July
22 14, 2005). This is so because, *inter alia*, the assigned invention is described by the
23 application and any continuations in part thereof, not specific claims, which are subject
24 to change during pendency of the patent application. *Id.*

### 4. Dismissal For Failure To Join A Necessary And Indispensable Party

26 Rule 12(b)(7) provides for dismissal for "failure to join a party under Rule 19."
27 Fed. R. Civ. P. 12(b)(7). Determining whether a claim should be dismissed in the
28 absence of an indispensable party under Rule 19 involves a two-step inquiry. *See Lyon*

*v. Gila River Indian Cmty.*, 626 F.3d 1059, 1067 (9th Cir. 2010).  The court must first determine whether a party is required under Rule 19(a).  *See id.*  If joinder is not feasible, then the court must determine whether to press forward without the non-party or to dismiss the litigation under Rule 19(b).  *See id.*

The Federal Circuit has long applied the rule that a patent co-owner seeking to maintain an infringement suit must join all other co-owners.  *See Israel Bio-Eng'g Project*, 475 F.3d at 1264-65.  However, the Federal Circuit also explicitly held that "Rule 19 does not permit the involuntary joinder of a patent co-owner in an infringement suit brought by another co-owner."  *DDB Techs.*, 517 F.3d at 1289 n.2.  When a co-owner cannot maintain suit without other co-owners due to its lack of standing, dismissal of the action is required.  *See STC.UNM v. Intel Corp.*, 754 F.3d 940, 941 (Fed. Cir. 2014) (affirming dismissal because all co-owners must ordinarily consent to join as plaintiffs in an infringement suit but a co-owner of a patent cannot be involuntarily joined under Rule 19).  This rule "protects a co-owner's right to not be thrust into costly litigation where its patent is subject to potential invalidation" and "safeguards against the possibility that each co-owner would subject an accused infringer to a different infringement suit on the same patent."  *Id.* at 947.

## IV.  **FULFILLIUM LACKS STANDING TO SUE IN ITS NAME ALONE BECAUSE IT IS A MERE CO-OWNER OF THE '930, '915, AND '367 PATENTS**

### 1.  **Assignment Of The '224 Application Transferred Title To The '930, '915, and '367 Patents To Sensurtec.**

The '930 and '915 patents recite on their cover pages that the applications that matured as those patents are each a "continuation of application No. 11/282,224, filed on Nov. 18, 2005, which is a continuation-in-part of application No. 11/170,274, filed on Jun. 28, 2005 …" (Gray Decl. Exs. 1, 2.)  The '367 patent recites on its cover page that the application that matured as that patent is a "[c]ontinuation of application No. 15/232,485, filed on Aug. 9, 2016, which is a continuation of application No.

14/971,845, filed on Dec. 16, 2015, now Pat. No. 9,456,915, which is a continuation of application No. 11/282,224, filed on Nov. 18, 2005, now abandoned, which is a continuation-in-part of application No. 11/170,274, filed on Jun. 28, 2005 …" (Gray Decl. Ex. 3.)  As defined in the Manual of Patent Examining Procedure ("MPEP") § 201.07, used by the United States Patent and Trademark Office ("USPTO") to govern examination of U.S. patent applications, a "continuation application" is defined as "an application for the invention(s) disclosed in a prior-filed copending nonprovisional application … The disclosure presented in the continuation must not include any subject matter which would constitute new matter if submitted as an amendment to the parent application."  A "continuation-in-part application" is defined in MPEP § 201.08 as "an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application and adding matter not disclosed in the earlier nonprovisional application."  *See Applied Materials*, 2005 WL 1656894, at *4.

MPEP § 306 provides that for a "continuation application, a prior assignment recorded against the original application is applied (effective) to the … continuation application because the assignment recorded against the original application gives the assignee rights to the subject matter common to both applications."  This Section also provides that "[i]n the case of a substitute or continuation-in-part application, a prior assignment of the original application is not applied (effective) to the substitute or continuation-in-part application .... Substitute or continuation-in-part applications require the recordation of a new assignment if they are to be issued to an assignee, unless the substitute or continuation-in-part application is filed on or after September 16, 2012, and the assignee is the original applicant therein."

Here, the '224 application, from continuation applications of which each of the '930, '915, and '367 patents matured, was assigned by Dr. Chen to Sensurtec.  In accordance with MPEP § 201.07, that means that the inventions disclosed in the '930, '915, and '367 applications are the identical inventions disclosed in the '224 application.

And pursuant to MPEP § 306, the assignment from Dr. Chen to Sensurtec also was effective to transfer title to the inventions disclosed in the '930, '915, and '367 patents to Sensurtec, without need for execution of a further assignment by Dr. Chen.

The cover pages of each of the '930, '915, and '367 patents also recite that the '224 application is a continuation-in-part application of the '274 application, which, according to MPEP § 201.08, means that the '224 application contains additional inventive disclosure beyond that which is disclosed in the '274 application. Under MPEP § 306, the assignment for the '274 application was *not* effective to transfer title to the additional inventions set forth in the '224 application to Fulfillium as assignee of the '274 application. For this reason, Dr. Chen was required to, and did, execute an assignment of the new inventions disclosed in the '224 application, and chose to assign those inventions to Sensurtec.

As a result of the foregoing assignments by Dr. Chen, Sensurtec holds all right, title and interest to the '224 application and the inventions disclosed therein, as well as the '930, '915, and '367 patents, which were filed as continuation applications of the '224 application. This is so because the continuation applications that matured as the '930, '915, and '367 patents also were transferred to Sensurtec by Dr. Chen's executed assignment of the '224 application. Even if Fulfillium were to argue that it retained all right, title and interest to the common subject matter of the '224 and '274 applications by operation of Dr. Chen's assignment of the '274 application to Fulfillium, Sensurtec is at least a co-owner of the '930, '915, and '367 patents by operation of Dr. Chen's assignment of the '224 application to Sensurtec. Moreover, Dr. Chen cannot parse the rights in the assigned inventions on a claim-by-claim basis: an assignment must convey to the transferee "the entire and unqualified monopoly which the patentee held." *Pope Mfg. Co. v. Gormully & Jeffrey Mfg. Co.*, 144 U.S. 248, 250 (1892). *See also MHL Tek, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1274-75 (Fed. Cir. 2011).

Nor may Dr. Chen be permitted to argue that his assignment of the '224 application does not somehow extend to the claims of the '930, '915, and '367 patents.

1 The doctrine of assignor estoppel prevents the unfairness and injustice that would result
2 if a party who transfers patent rights to an assignee is permitted to thereafter argue that
3 what he transferred was worthless. *Mentor Graphics Corp. v. Quickturn Design Sys.,*
4 *Inc.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998); *Applied Materials,* 2005 WL 1656894, at *4.
5 Allowing Dr. Chen to argue that the inventions claimed in the '930, '915, and '367
6 patents were not within the scope of the assignment of the '224 application would nullify
7 the express language of the assignment, which conveyed "all right, title and interest in
8 and *to the invention* and application … for the full term of any Letters Patent and
9 Registrations which may be granted thereon, or of any division, renewal, *continuation*
10 in whole or in part …" (Gray Decl. Ex. 9.) Because the doctrine of assignor estoppel is
11 binding against the assignor and those in privity with him, neither Dr. Chen nor
12 Fulfillium (of which Dr. Chen purports to be Chief Executive Officer) are permitted to
13 challenge the scope of Dr. Chen's assignment of the '224 application or the '930, '915,
14 or '367 patents. *Mentor Graphics*, 150 F.3d at 1377; *Applied Materials,* 2005 WL
15 1656894, at *4.

### 2. Fulfillium Is A Mere Co-Owner Because Dr. Chen Had No Legal Title To Assign To Fulfillium In The '930, '915, Or '367 Patents.

18 Dr. Chen purports to have executed assignments to Fulfillium for applications
19 maturing as the '930, '915, and '367 patents on August 4, 2016. (Gray Decl. Exs. 10,
20 11, 12.) However, because he had already assigned away his rights to the inventions
21 disclosed in those patents to Sensurtec in his assignment of the '224 application, dated
22 July 19, 2013, by August 4, 2016, he no longer possessed any rights in the applications
23 for the '930, '915, and '367 patents. With no rights to assign to any third-parties, Dr.
24 Chen's purported assignments to Fulfillium on August 4, 2016 were ineffective. *See*
25 *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1365 (Fed. Cir. 2010)
26 ("Without ownership, AZ–UK had no authority to convey either the patents' equitable or
27 legal titles to Abraxis."). Fulfillium was therefore reduced to a co-owner of the '930,
28 '915, and '367 patents to the extent it was assigned Craig Johanson's, Christopher

Jones's, Reinhold Dauskardt's and Marc Taub's co-inventor rights. *See Ethicon*, 135 F.3d at 1465 (when multiple inventors are listed on the face of a patent, "each co-inventor presumptively owns a pro rata undivided interest in the entire patent"). Accordingly, Fulfillium never obtained all the rights to the '930, '915, and '367 patents and therefore lacks the standing to sue in its name alone. *See Israel Bio-Eng'g Project*, 475 F.3d at 1262 ("Even an ownership interest, however, would not be sufficient to give [any one co-owner] prudential standing to sue for infringement, as [a co-owner] would have to join all the other co-owners in order to establish such standing.").[1]

### 3. Sensurtec Is An Indispensable Party, Was Not Joined By Fulfillium, And The Patent Claims Must Now Be Dismissed.

If not for the lack of standing, the Court should dismiss the case for Fulfillium's failure to join Sensurtec, co-owner of each of the '930, '915, and '367 patents, as co-plaintiff. *STC.UNM*, 754 F.3d at 941 (affirming dismissal of an action in which plaintiff could not maintain its suit because non-party is a co-owner of the patent, had not voluntarily joined as co-plaintiff, and could not be involuntarily joined).

As documented above, Sensurtec is a necessary party for establishing standing because it holds an ownership interest in each of the '930, '915, and '367 patents. *Israel Bio-Eng'g Project*, 475 F.3d at 1264 ("Where one co-owner possesses an undivided part of the entire patent, that joint owner must join all the other co-owners to establish standing.").

Moreover, Sensurtec has substantial rights under the '930, '915, and '367 patents and has not agreed to waive those rights. Therefore, its absence from this action places ReShape Medical at risk of multiple litigations related to the '930, '915, and '367

---

[1] In connection with the parties' pre-filing conference, as required under Local Rule 7-3, Fulfillium produced an undated document purportedly executed between Fulfillium and Sensurtec that Fulfillium contended entitled it to bring suit without joining Sensurtec. That document did not create sufficient rights in Fulfillium to bring suit in its name alone. *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1280 (Fed. Cir. 2007) (exclusive license in a field of use insufficient to permit licensee to bring suit alone); *Pope Mfg.*, 144 U.S. 248 (assignee of specified claims could not bring suit without assignor).

patents and prevents the Court from providing complete relief in a single action. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001) ("The presence of the owner of the patent as a party is indispensable, not only to give jurisdiction under patent laws, but also in most cases to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions.") (quoting *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 468 (1926)). For example, even if ReShape Medical prevails against Fulfillium in this action, Sensurtec has not agreed to be bound by any judgment against Fulfillium and can instigate subsequent litigation on the '930, '915, and '367 patents, exposing ReShape Medical to the risk of duplicative litigation. *See Prima Tek II*, 222 F.3d at 1381 ("one of the underlying policies of the rule of *Independent Wireless* is to prevent duplicative litigation against a single accused infringer"). Accordingly, Sensurtec is a required party under Rule 19(a).

Fulfillium was alerted to its defect in standing as early as April 19, 2018 (D.I. 97 at 7:17-8:17), well before the Court's deadline of May 10, 2018 by which the parties were to request leave to add new parties. (D.I. 86.) Fulfillium elected not to join Sensurtec before that deadline. For its part, Sensurtec did not consent to join the action, and cannot be involuntarily joined under Rule 19. *See STC.UNM*, 754 F.3d at 946 ("Rule 19 does not permit the involuntary joinder of a patent co-owner in an infringement suit brought by another co-owner"). At this juncture, there is no good basis to permit Sensurtec to be added as a party to this litigation.

Were the action to proceed without Sensurtec, Sensurtec also could be prejudiced. For example, should ReShape Medical prevail on its patent invalidity assertions, Sensurtec, being absent, would be unable to protect its interests. Sensurtec could lose all rights in its patents despite the fact that it had no opportunity to defend its interests. *See A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1221 (Fed. Cir. 2010). There is no reasonable way to "shape" an invalidity relief that can avoid prejudice to Sensurtec. *Id.*

at 1220 (the prejudice cannot be lessened or avoided by fashioning an invalidity ruling that affects only one patent co-owner and not all co-owners). Concomitantly, to the extent the Court renders any judgment that avoids prejudice to any absent patent owner, as it must, ReShape Medical is not adequately protected from piecemeal litigation. Even if Sensurtec could be joined as plaintiff, the joinder would be prejudicial to ReShape Medical, as the discovery cut-off date of September 5, 2018 is less than four months away.[2]

Because Fulfillium did not attempt to rectify its standing defect when alerted of that issue by ReShape Medical well prior to May 10, 2018 deadline, and Sensurtec has not consented to join this litigation and cannot be involuntarily ordered to do so, the patent claims must be dismissed from this litigation.

## V. **CONCLUSION**

For all the foregoing reasons, the Court should dismiss the patent infringement claims from this action under Rule 12(b)(1) because Fulfillium lacks standing to sue in its own name, or alternatively, under Rule 12(b)(7) because Fulfillium failed to join a necessary and indispensable party.

---

[2] While the Sensurtec website identifies Dr. Chen as its Founder and Chief Executive Officer, Dr. Chen has informed this Court that he is merely a "consultant" of Fulfillium, notwithstanding that Fulfillium has represented to the USPTO that Dr. Chen is the Chief Executive Officer of Fulfillium. (*Cf.*, D.I. 22 at ¶ 2 with D.I. 110-4.) It is at best unclear whether Dr. Chen can be compelled to testify and attend trial on behalf of Fulfillium, and even if so, whether he could be examined based on his involvement in Sensurtec.

11      Case No. 2:17-cv-08419-RGK-PLA

DATED: June 4, 2018

Respectfully submitted,

FOLEY & LARDNER LLP

*/s/ Nicola A. Pisano*
Nicola A. Pisano (CA Bar No. 151282)
    npisano@foley.com
Jose L. Patiño (CA Bar No. 149568)
    jpatino@foley.com
Justin E. Gray (CA Bar No. 282452)
    jegray@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130-3302
Telephone:  858.847.6700
Facsimile:   858.792.6773

Attorneys for Defendant and Counter-Plaintiff
RESHAPE MEDICAL LLC

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this case.

Executed on June 4, 2018.                    FOLEY & LARDNER LLP


*/s/ Nicola A. Pisano*
Nicola A. Pisano (CA Bar No. 151282)
   npisano@foley.com

Attorney for Defendant and Counter-Plaintiff
RESHAPE MEDICAL LLC